IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. H-03-221-S |
| | § | |
| TYRONE MAPLETOFT WILLIAMS | § | |

**ORDER ON MOTIONS *IN LIMINE***

The government asks this court to grant four motions in limine.  This court has discretion to place reasonable limits on counsel's questioning of witnesses and comments to, and in the presence of, the jury.  "Reasonable limits on [comments] 'based on concerns about . . . harassment, prejudice, confusion of the issues . . . or [comment] that is repetitive or only marginally relevant' are permissible." *United States v. Maloof*, 205 F.3d 819, 828 (5th Cir. 2000) (quoting *United States v. Gray*, 105 F.3d 956, 964-65 (5th Cir.), *cert. denied*, 520 U.S. 1246 (1997)).

The first Motion *in Limine* asks this court to order counsel to approach the bench outside the presence of the jury before presenting a definition other than that given by the court in its instructions on the law for the term "act of violence."  To the extent the government seeks to prevent counsel on both sides from attempting to instruct jurors on the law, counsel for Williams does not oppose the motion.

The government also asks this court to rule on the definition of the term "act of

1

violence." The government presented two definitions, one that defense counsel does not oppose, and one that is opposed.

The federal death penalty statute, 18 U.S.C. § 3591, provides for a sentence of death if a defendant is convicted of an offense for which a sentence of death is provided and the defendant

> intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person . . . such that participation in the act constituted a reckless disregard for human life and the victim died as a result of the act . . . .

18 U.S.C. § 3591(a)(2)(D). The government first asked this court to define "act of violence" as: "An act, that by its nature, creates a grave risk of serious injury to a person or a grave risk of death to a person." The government filed a response to defendant's objection to the motion, asking this court to define "act of violence" to include either a "positive or a negative act."

The death penalty statute itself states that an "act of violence" is an act that "create[s] a grave risk of death . . . such that participation in the act constitute[s] a reckless disregard for human life . . . ." The government's proposed first definition of the term comports with the use of the term in this statute. The term is used in a similar manner elsewhere in the federal criminal code. In criminalizing certain conduct connected with civil disorders, 18 U.S.C. §§ 231-232 defines a civil disorder as "acts of violence . . . which cause[] an immediate danger of or result[] in damage or injury to the property or person of any other individual." Similarly, 18 U.S.C. §§ 2101-2102 prohibit inciting, encouraging and

participating in a riot, defined in part as "an act or acts of violence . . . which . . . constitute a clear and present danger of, or . . . result[s] in, damage or injury to the . . . person of any other individual."  18 U.S.C. § 2291 prohibits any "act of violence that causes or is likely to cause serious bodily injury" in, on, or near maritime vessels.  Section 2291 adopts the definition of "serious bodily injury" contained in 18 U.S.C. § 1365(h)(3) ("the term 'serious bodily injury' means bodily injury which involves (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty").  The term "act of violence" is used throughout the federal criminal code to mean an act causing a grave risk of serious bodily injury or death undertaken with reckless disregard for human life.

Defining this term to encompass acts exhibiting reckless indifference to human life satisfies constitutional standards for eligibility for a death sentence.

> [T]he reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

*Tison v. Arizona*, 481 U.S. 137, 157-58 (1987).

The government's first proposed definition accurately reflects the use of the term throughout the federal criminal code and satisfies constitutional concerns.  The government's second proposed definition does not track the use of the term throughout the federal statutes and is unnecessarily ambiguous.

The government's Motion *In Limine* No. 1 is granted, as follows:

Counsel must approach the bench before referring to a definition of "act of violence" other than that presented above.

The government's Motion *In Limine* No. 2 asks the court to order counsel and witnesses to refrain from referring to Williams's prior jury trial. Defense counsel urges that this motion would unduly restrict asking potential jurors about their knowledge of prior media coverage and whether potential jurors have formed an opinion based on that coverage. In his memorandum of law, Williams also suggests that this prohibition would prevent him from confronting witnesses with their prior sworn testimony. Williams's objections are unpersuasive because the limine motion does not seek the restrictions he finds objectionable.

A prohibition on specific reference to the prior trial or its outcome does not impact counsel's ability to inquire about a potential juror's knowledge or impressions based on media coverage. If a potential juror indicates prior knowledge of this case, counsel and the court will aks what the juror has learned and from what source. If the potential juror knows that there was a prior trial, counsel and the court may explore the extent of that knowledge in voir dire examination. If, however, a potential juror does not know of a prior trial or any details about it, there is no need to provide that juror with the information. Once voir dire is concluded and the jury selected, there is no need to the refer to the prior trial or its result, as opposed to a generic reference to a prior statement of a witness or a prior proceeding in this case. Counsel need not refer to the prior trial in confronting a witness with prior testimony. Rather, counsel may simply ask if the witness previously gave sworn testimony

4

and then confront the witness with that testimony.

The jury in this case will be instructed to base its decision on the evidence presented in this trial and on the law as explained by the court. The prior trial is irrelevant except as set out above.  The government's Motion *In Limine* No. 2 is granted in part. Counsel will not refer to Williams's previous trial except as necessary during voir dire, as required after a venire member has without solicitation indicated prior knowledge of the prior trial.

The government's Motion *in Limine* No. 3 asks the court to order counsel to refrain from arguing racially selective prosecution.  Williams objects, arguing that "[r]ace is a factor the jury must consider."

To raise an equal protection argument based on a racially motivated selective prosecution, a defendant must make a *prima facie* case of discriminatory purpose by the prosecutors and discriminatory effect.  *United States v. Armstrong*, 517 U.S. 456, 465-66 (1996).  The Fifth Circuit has already ruled that Williams has not made a *prima facie* case of selective prosecution.  *See In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) ("Williams has not made the requisite showing under *Armstrong* to warrant discovery under a selective prosecution claim.").

The limine order is narrow.  It does not preclude Williams from effectively cross-examining other parties who have pleaded guilty.  The government has clarified that the motion *in limine* is not intended to preclude Williams from presenting evidence of race during the penalty phase.  Williams may raise the topic of his race during the penalty phase to the extent it is relevant to his background or character or the circumstances of the offense.  *See*

5

*Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) ( "[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from *considering as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."). Motion *in Limine* No. 3 is granted to the extent of requiring counsel to approach the bench outside the jury's presence before referring to any claim that the prosecution of Williams is the result of racially selective prosecution.

Motion *in Limine* No. 4 asks for an order precluding any reference in the jury's presence to the potential punishment, during the guilt/innocence phase of the trial. This motion is unopposed and is granted.

SIGNED on October 3, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge