**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-03-0221-11 |
| | § | |
| | § | |
| TYRONE MAPLETOFT WILLIAMS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The Houston Chronicle Publishing Company (the "Chronicle") has filed a motion asking this court to rescind an order issued in March 2005 restricting jurors' communications with the press.  In addition, the Chronicle asks this court to unseal the list of jurors who served in the 2005 trial, to allow the Chronicle to contact them and seek interviews that they were unable to obtain because of the earlier restriction.  The prosecution agrees that the March 2005 order was overbroad, but disputes that jurors' personal information should be released.  The defense has no position on this dispute.

This court has carefully considered the motion, the record, the parties' responses, and the applicable law.  Based on that review, this court agrees that certain aspects of the earlier order should be modified, but disagrees that the Chronicle should have access to juror lists. The reasons are set out below.

## I.      Background

There has been extensive publicity about this case from the early stages of the investigation that led to the indictment to the present.  In early 2005, the district court tried the defendant, Tyrone Mapletoft Williams, on sixty-one counts of alien-smuggling offenses, including counts for which the government sought the death penalty.  That jury convicted Williams on certain counts and deadlocked on others.  The court declared a mistrial as to the deadlocked charges and entered a judgment of guilty on the other charges.  On March 11, 2005, the judge presiding over the prior trial issued an order that restricted extrajudicial statements by trial participants, including jurors, citing the need to select an impartial jury in future proceedings.  On March 23, 2005, after the jury announced that it could not reach a verdict on certain counts, the court issued an order from the bench before discharging the jury.  That order prohibited the jurors from discussing the case with anyone in the media. The court did "not want any coverage about the deliberation of the jury in the newspaper, your specific thoughts about your deliberations in this case or anything else. . . . So, my admonishment to you is to not discuss this case in the media—with anybody from the media. I'm also going to ask you to not discuss this case with these lawyers." On May 11, 2005, the court rescinded the March 11, 2005 written order but did not rescind the March 25, 2005 order issued from the bench.

On May 10, 2006, the Fifth Circuit Court of Appeals vacated the conviction and remanded the case for retrial.  This court began jury selection in August 2006 by summoning a large venire to complete an extensive questionnaire, followed by voir dire examination of

the panel as a group and then by individual questioning of venire members. The questionnaire and voir dire examination included extensive questions on the prospective jurors' knowledge of pretrial publicity. Jury selection ended on October 19, 2006 and the evidence began on October 23, 2006.

The Chronicle asks this court to rescind the March 25, 2005 bench order, asserting that it is unconstitutionally broad. The Chronicle argues that because it was unable to talk to jurors after they were discharged from the earlier trial, identifying information about those jurors should now be made available so the Chronicle may contact them to see if they would "be willing to speak about the case." (Docket Entry No. 1432 at 2).

## II.     The Applicable Law

News organizations are entitled to receive, investigate, and report on public proceedings in a trial. *Zemel v. Rusk*, 381 U.S. 1, 17 (1965); *In re Express-News Corp.*, 695 F.2d 807, 809 (5th Cir. 1982). But these rights do not "guarantee journalists access to sources of information not available to the public generally." *In re Express-News Corp.*, 695 F.2d at 809 (citing *Banzburg v. Hayes*, 408 U.S. 665, 684 (1972)); *United States v. Gurney*, 558 F.2d 1202, 1208 (5th Cir. 1977) ("The right to speak and publish does not carry with it the unrestrained right to gather information." (quoting *Zemel*, 381 U.S. at 17)).

A "court rule cannot . . . restrict the journalistic right to gather news unless it is narrowly tailored to prevent a substantial threat to the administration of justice." *United States v. Cleveland*, 128 F.3d 267, 269 (5th Cir. 1997) (quoting *In re Express-News Corp.*, 695 F.2d at 810). Courts consider an order's time and scope restrictions, whether it prohibits

3

all types of communications on all subject matters, and whether it applies equally to all jurors regardless of their desire to speak. *Id.*

The district court in *In re Express News Corp.* applied a local rule providing that "no person shall interview . . . any juror, relative, friend, or associate thereof . . . with respect to the deliberations or verdict of the jury in any action, except on leave of court granted upon good cause shown." *In re Express-News Corp.*, 695 F.2d at 808. The Fifth Circuit identified what made the order constitutionally offensive: it was unlimited in time and scope; applied equally to jurors "willing and anxious to speak and to jurors desiring privacy"; covered "courteous as well as uncivil communications"; and covered questions about a juror's general reactions as well as specific questions about deliberations that might be inappropriate. The order did not rest on a showing of good cause for curtailing the journalists' right to gather news. *Id.* at 810. At the same time, the court recognized that the right to gather news is not absolute. Journalists have no right to access sources of information not available to the public generally, and countervailing considerations may outweigh journalists' First Amendment rights, including an accused's Sixth Amendment right to a fair trial and the jurors' right to privacy and protection against harassment even after their jury service is completed. *Id.* at 809–10.

Subsequent cases reflect this analysis. In *United States v. Harrelson*, 713 F.2d 1114 (5th Cir. 1983), the district court imposed restrictions on proposed interviews with jurors discharged following a highly publicized trial. The order recognized that jurors had the right to refuse all interviews or comment; prohibited repeated requests for interviews or comment

4

after a juror refused; and prohibited inquiry into other jurors' votes. The appellate court affirmed the order, noting that when the fact of extensive pretrial publicity is well-known, no specific evidentiary hearing on its effect need be conducted. The court also emphasized that members of the press are limited to reporting what occurs in open court, but have no special right of access to information not available to the public at large, including jury deliberations. *Id.* at 1118.

In *United States v. Cleveland*, 128 F.3d 267, 269 (5th Cir. 1997), the Fifth Circuit upheld a trial-court order prohibiting posttrial interviews with jurors about their deliberations. That order did not foreclose jurors from being interviewed about their reactions to the verdict itself. The order prohibited the parties and lawyers from talking to the jurors absent court order, but did not purport to prevent jurors who wished to from speaking out on their own initiative. *Id.* at 270. The court noted that the "great amount of media coverage of the trial from start to finish" justified an order that applied equally to all the jurors, whether they wanted publicity or privacy, and to all communications, whether they were courteous or uncivil. *Id.*

In *United States v. Brown,* 250 F.3d 907, 922 (5th Cir. 2001), which involved a notorious trial of a state governor on public corruption charges, the district court empaneled an anonymous jury. The order was based on a record showing efforts to interfere with the judicial process. After the trial, the district court prohibited the release of the jurors' names, addresses, and places of employment but provided that any juror who wished to waive anonymity could do so. *Id.* at 920–22. The Fifth Circuit affirmed. In response to the

5

argument that no compelling reason justified continued secrecy about the jurors after the trial had ended, the court emphasized that the practice of refusing to publicly release the jury list was "well-established" and that "[t]he judge's power to prevent harassment and protect jurors does not cease when the case ends." *Id.* at 918–19.  The court held that "while at the outer limit of permissible restrictions, [the district court's order was] narrowly tailored to prevent real threats to the administration of justice, not just in this case but in the subsequent related prosecutions." *Id.* at 922.

**III.   Analysis**

The Chronicle argues that the March 23, 2005 order issued from the bench is overbroad.  A review of this circuit's precedents makes clear that given the extensive and prolonged publicity surrounding this case and the fact that other trials in the same case remained, the trial judge could instruct the jurors that they had no obligation to speak to any person about the case; could discuss their own general reactions to the trial proceedings but could not be questioned by anyone, absent a court order, about the debates and discussions that took place in the jury room until the jury was discharged; and could not discuss, absent court order, the votes of other jurors.  To the extent the prior order exceeded these limits, it was overbroad.  *See In re Express-News Corp.*, 695 F.2d at 811.  This court modifies the March 25, 2005 order as follows:

> The jurors from the first trial of *United States v. Tyrone Mapletoft Williams*, No. 4:03-cr-221-11, have no obligation to speak to any person about their service as jurors or any aspect of the case.  If they wish to initiate communication with any media representative, they may do so, but they may only discuss their own general reactions to the trial proceedings.  They may not be interviewed or talk about the debates and discussions that took place in

6

the jury room before the jury was discharged or the votes of other jurors.  A juror who chooses to be interviewed may end the interview whenever the juror wishes.

The Chronicle has also asked this court to release the list of jurors who served in the first trial, arguing that it is necessary to cure the effects of the earlier overbroad restrictions on interviewing these jurors.  By general order, this district prohibits the release of jurors' personal information.  General Order No. 2004-11, *In the Matter of Protecting Personal Privacy in Public Case Files*, states that "documents containing identifying information about jurors or potential jurors" are not to be "included in the public case file and should not be made available to the public at the courthouse or via remote electronic access."  This general order is consistent with well-established practice and with the long-recognized interest in protecting jurors' privacy.  *Brown*, 250 F.3d at 920 ("Ensuring that jurors are entitled to privacy and protection against harassment, even after their jury duty has ended, qualifies as such an interest in this circuit."); *Gurney*, 558 F.2d at 1210 n.12 ("[T]he judge was following a well-established practice when he refused to publicly release the jury list, which included the names, addresses, and other personal information about the jurors.  Such protection of the privacy of the jurors was clearly permissible, and certainly appropriate in a trial which attracted public attention as this one did.").  A judge's authority to protect jurors' privacy does not end when the case ends.  *Brown*, 250 F.3d at 919.

The courts of this district have made a promise to its jurors and potential jurors that their personal information will be protected.  The media had no right in March 2005 to obtain this information.  The media has no greater right to this information now.  The need to

7

protect the jurors' privacy outweighs the media's interest in having interviews with jurors that might have occurred in March 2005 had a less restrictive order issued when those jurors were discharged.  The Chronicle's motion for the disclosure of the jury list or identifying information from that list is denied.

**IV.    Conclusion**

The March 25, 2005 bench order is modified.  The jurors from the first trial of *United States v. Tyrone Mapletoft Williams*, No. 4:03-cr-221-11, have no obligation to speak to any person about their service as jurors or any aspect of the case.  If they wish to initiate communications with any media representative, they may do so, but they may only discuss their own general reactions to the trial proceedings.  They may not be interviewed or talk about the debates and discussions that took place in the jury room before the jury was discharged or the votes of other jurors.  A juror who chooses to be interviewed may end the interview whenever the juror wishes.

The Chronicle's motion for the disclosure of the jury list or identifying information from that list is denied.

SIGNED on October 30, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge